IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DARREYLL T. THOMAS,

                           Plaintiff,

v.

MICHAEL REESE, *et al.*,

                           Defendants.

ORDER

13-cv-597-wmc

---

*Pro se* plaintiff Darreyll T. Thomas is proceeding on claims that deputies at the Dane County Jail used excessive force, battered and retaliated against him because he refused to sleep on a top bunk. Several matters are before court and are resolved as explained below.

OPINION

1. **Plaintiff's Motion to Amend His Complaint (Dkt. #123).**

Plaintiff has filed a motion for leave to amend his complaint to add claims against Sergeant Dennis Seiren, Captain Richelle Anhalt and, Lieutenant Mark Twombly. Plaintiff contends Seiren should be added because he supervised defendants Hampton and VanNorman on the date of the incident that is the subject of his complaint. He further contends Anhalt and Twombly should be added to explain why edits were made to the use of force section of the incident report.

Plaintiff's motion will be denied because he has failed to allege facts that would support a finding that these individuals violated his constitutional rights. First, there is no *respondeat superior* or vicarious liability under § 1983. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978); *Kinslow v. Pullara*, 538 F.3d 687, 693 (7th Cir. 2008). In other words, for a supervisor to be liable he or she must be "personally responsible for the deprivation of

the constitutional right." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). To be held liable under § 1983, a supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see[.]" *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)). Certainly, a failure to supervise *can* give rise to liability under § 1983, but only "if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997); *see also Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Here, plaintiff does not allege facts showing that Sergeant Seiren was involved in the alleged use of force against him, or even that he was aware of the incident until after it occurred.

As for Twombly and Anhalt, plaintiff's current allegations about actions taken after the incident, whether related to the investigation or subsequent report, also do not implicate any constitutional violation. Of course, this does not prevent plaintiff from exploring the possibility of a cover up by Dane County Jail generally (or these putative defendants specifically) to the extent it may lead to the discovery of relevant information regarding the conduct of the actual defendants. Accordingly, his motion to add claims against these defendants is denied.

2.  **Plaintiff's Requests for Assistance in Recruiting Counsel and the Parties' Cross Motions for Summary Judgment.**

Plaintiff has also filed at least five motions requesting assistance in recruiting counsel in this case. Each of those motions was denied on the ground that plaintiff had not shown that the legal and factual difficulty of the case exceeded his ability to litigate it. *Pruitt v. Mote*, 503 F.3d 647, 654, 656 (7th Cir. 2007). This case has now reached the summary

judgment stage, and both sides have moved for summary judgment. After reviewing the parties' respective filings, the court now is persuaded that it is appropriate to assist plaintiff in finding counsel.

While defendants moved for partial summary judgment, they also concede that there are disputed issues of fact with respect to plaintiff's excessive force claim that will require a trial. (Dkt. #131.) Indeed, the investigative reports of the incident certainly raise questions regarding the appropriateness of the use of force against plaintiff. Plaintiff also moved for summary judgment, but included arguments regarding claims for which he was not allowed to proceed in this case (*e.g.*, procedural due process and several state statutes). (Dkt. #125.) Although plaintiff appears to have attempted to follow the court's summary judgment procedures, his submissions also show that he misunderstands evidentiary requirements, the nature of the claims on which he has been allowed to proceed, and his burden at summary judgment. These submissions raise legitimate doubts about his ability to respond to defendants' summary judgment motion, much less represent himself at what appears to be a near certain trial.

Accordingly, both motions for summary judgment will be denied without prejudice and the case will be stayed while the court looks for counsel to represent plaintiff. After counsel has been recruited, the court will set a status conference. Counsel may then decide whether to request assistance in mediating this case, before renewing their respective summary judgment motions.

3.  **Video Footage.**

Finally, there remains a dispute about video footage of the incident in question. On December 2, 2015, this court resolved several discovery disputes between the parties, but reserved a ruling on plaintiff's motion to compel defendants to provide him with the video footage of the incident at issue in this case. (Dkt. #110 at 3-4.) Although defendants had argued that allowing plaintiff to view the video raised security concerns, they provided insufficient information regarding any particular security concern. The court directed defendants to either: (1) allow plaintiff to view the video; or (2) file a copy of the video with the court, along with a specific explanation why the video footage raises a security risk, including a sealed affidavit attaching a schematic of the room being recorded, designating the location of all video cameras and explaining which parts of the footage in particular raise security concerns. (*Id.* at 4.)

Defendants subsequently provided a copy of the video with the court, along with (1) a schematic of the pod where the incident at issue took place (with the locations of each security camera marked) and (2) an affidavit from Sergeant Krist Boldt, describing the jail's specific security concerns regarding the video. (Dkt. #111.) As described by Boldt, the schematic shows that there are certain areas of the pod that are not fully captured by the security cameras, which appears confirmed by the court's review of the video footage in question. Regardless, the use of force incident was not captured by any security camera, which substantially diminishes the value of the video footage in question. That is not to say that the footage would be completely useless to plaintiff, as it shows the events that occurred right before the use of force incident and shows that several inmates were witnesses to the use

4

of force. If plaintiff knows any of the inmates shown in the video, he could contact them as potential witnesses for trial.

This leads to the question whether plaintiff is entitled to view video footage that may have minimal evidentiary value and raises some security concerns. The court concludes that, because it may provide some evidentiary benefit, plaintiff should be permitted to view the video. Although defendants have raised some security concerns, the question remains why the jail cannot move the security cameras or install additional security cameras to capture what seems a significant and troubling blind spot in their camera system. Additionally, defendants' security concerns remain rather vague and attenuated, as they are based on the possibility that plaintiff will assume that the blind spot still exists some three years later, return to the jail sometime in the future, and seek to somehow take advantage of that blind spot or notify (or worse, even encourage) another inmate at the jail how to do so.

Defendants have not actually stated that plaintiff or any other inmate at the jail has attempted to take advantage of a known or perceived blind spot in the past. Boldt *does* state that allowing inmates to learn of a blind spot "might present a hazard in the future for inmates who wanted to engage in prohibited conduct, because they would learn where they *could not be seen by deputies*." (Dkt. #96, Boldt Aff. ¶ 4 (emphasis added).) Here, however, both Boldt and the schematics show that the area at issue here is "*immediately adjacent to where a deputy sheriff is stationed*." (Dkt. #111, Boldt Aff. ¶ 8 (emphasis added).)

Given its age and defendants failure to provide specifics as to their concerns regarding how inmates may seek to "take advantage" of this particular area -- especially one so near a deputy sheriff's known location -- defendants must allow plaintiff to view the video footage in question. Once the court has recruited counsel for plaintiff, defendants must either arrange

5

for plaintiff and his counsel to view the video footage, or must provide a copy of the video to plaintiff's counsel. This should be accomplished within two weeks of that counsel's filing of a notice of appearance in this case, or other written document advising of his or her representation of the defendant.

Plaintiff also filed three, additional motions relating to the video footage: (1) a motion seeking to obtain a personal copy of the video in question (dkt. #115); (2) a motion seeking to designate the video as an "expert witness" (dkt. #120); and (3) a motion to stay the case pending a decision on the video footage (dkt. #124). These motions will all be denied. Plaintiff may work with his counsel to view the video footage, but plaintiff need not be provided his own personal copy. The video footage may not be designated as an expert witness, because it is not a person, but may still be admissible into evidence for reasons plaintiff's counsel can explain upon coming on board. In any event, as the court is resolving the video footage issue and staying the case pending recruitment of counsel, the motion to stay is moot.

ORDER

IT IS ORDERED that

1. Plaintiff Darreyll T. Thomas's motion to amend his complaint (dkt. #123) is DENIED.

2. The parties' motions for summary judgment (dkt. ##125, 131) are DENIED WITHOUT PREJUDICE.

3. Plaintiff's motions to obtain a personal copy of the video footage (dkt. #115), to present video footage as an expert (dkt. #120), and to stay decision on his motion for summary judgment (dkt. #124) are DENIED.

3. The proceedings in this case are STAYED pending recruitment of counsel for plaintiff. If the court finds counsel willing to represent plaintiff, the court will advise the parties. Soon thereafter, a status conference will be held.

4. Within two weeks of plaintiff's recruited counsel's notice of appearance, defendants shall arrange for plaintiff and his counsel to view the video footage or provide a copy of the video footage to plaintiff's counsel.

Entered this 15th day of March, 2016.

                                      BY THE COURT:

                                      /s/

                                      _____
                                      WILLIAM M. CONLEY
                                      District Judge